Case 4:20-cv-01027   Document 30   Filed on 03/26/21 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
March 26, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FREDERICK FULLER, THADDEUS EDWARDS, JARVIS SANDIFER, and of similarly situated individuals, § § § § | |
| Plaintiffs, § | |
| § | CIVIL ACTION NO. H-20-1027 |
| v. § | |
| § | |
| JUMPSTAR ENTERPRISES, LLC, TFORCE FINAL MILE LLC, BRIAN TYSON and KATHLEEN TYSON, § § § § § | |
| Defendants. § | |

## MEMORANDUM AND OPINION

Three delivery drivers allege that their employer failed to pay overtime and minimum wages, violating the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and Chapters 61 and 62 of the Texas Labor Code. Frederick Fuller, Thaddeus Edwards, and Jarvis Sandifer allege that the defendants misclassified them as independent contractors exempt from the FLSA. (Docket Entry No. 2 at ¶1). One of the defendants, TForce Logistics East, LLC,[1] has moved for summary judgment on the ground that it is not a joint employer of the plaintiffs. (Docket Entry No. 25). The plaintiffs have responded, and TForce has replied. (Docket Entry Nos. 26, 27). Based on the motion, the briefs, the record, and the applicable law, the court denies the motion. The reasons are explained in detail below.

---

[1] The plaintiffs identified TForce as "TForce Final Mile, LLC" in the complaint. (Docket Entry No. 2 at ¶ 23). According to Elijah Naylor, Compliance Manager at TForce Logistics East, LLC, TForce was known as "TForce Final Mile, LLC" from March 2017 until December 2019. (Docket Entry No. 25-1 at ¶ 6). This defendant is referred to as "TForce."

**I.      Background**

TForce is a "same-day, last-mile transportation and logistics broker" headquartered in Texas. (Docket Entry No. 25 at 5; *see* Docket Entry No. 25-1 at ¶ 3). TForce contracts with independent businesses to provide next-day and same-day product delivery to customers. (Docket Entry No. 25-1 at ¶ 3). Based on business needs, TForce hires independent contractors to make pickups and deliveries in "specifically defined geographic territories." (*Id.* at ¶ 4).

Jumpstar Enterprises LLC is a Texas company that performs delivery services. (Docket Entry No. 25-2 at ¶ 2). It is owned by Kathleen Tyson. (*Id.*). Brian Tyson, Kathleen Tyson's husband, is the managing director. (*Id.*).

In May 2015, TForce and Jumpstar entered into a master contractor agreement, which made Jumpstar responsible for delivery logistics for several TForce warehouses located in different states. (Docket Entry No. 25-1 at ¶¶ 4, 7; Docket Entry No. 25-2 at ¶ 3; Docket Entry No. 25-3). Jumpstar, in turn, hired independent contractors to handle some of the deliveries. (Docket Entry No. 25-1 at ¶ 7).

The named plaintiffs, Fuller, Edwards, and Sandifer worked for Jumpstar as delivery drivers, picking up packages and furniture from TForce's warehouse and delivering them to customers. (Docket Entry No. 2 at ¶ 28). The plaintiffs drove trucks owned and insured by Jumpstar and wore TForce-branded clothing. (Docket Entry No. 2 at ¶¶ 34, 37). The plaintiffs allege that they routinely worked more than 40 hours per week and that they received no formal employment or tax records. (Docket Entry No. 2 at ¶¶ 29–32). In March 2020, they filed this collective action on behalf of "all other similarly situated hourly employees of [d]efendants who have worked as drivers from three years prior to the date of the filing of this action through the

2

date of final judgment in this matter." (*Id.* at ¶¶ 44–45). The plaintiffs claim that the defendants:[2] (1) failed to pay overtime wages, in violation of 29 U.S.C. § 207(a)(1); (2) failed to pay the minimum wage, in violation of 29 U.S.C. § 206(a) and Texas Labor Code § 62.051; (3) failed to provide proper earnings statements, in violation of Texas Labor Code § 62.003; (4) failed to pay all wages due upon separation from employment, in violation of Texas Labor Code § 61.014; and (5) made unlawful wage deductions, in violation of Texas Labor Code § 61.018. (*Id.* at ¶¶ 49–90). The plaintiffs seek injunctive relief; actual, liquidated, and multiple damages; statutory penalties; and attorneys' fees. (*Id.* at 12).

The plaintiffs served the Tysons in July 2020. (Docket Entry No. 20). Jumpstar and the Tysons have not answered or otherwise appeared in this action.

During the initial pretrial conference, the parties discussed the threshold issue of whether TForce is a "joint employer" of the plaintiffs. The court allowed discovery and set a deadline for a dispositive motion on the issue. (Docket Entry Nos. 18, 19). TForce has moved for summary judgment, arguing that it is not a joint employer. The plaintiffs have responded, and TForce has replied. (Docket Entry Nos. 25, 26, 27). The court held a hearing to hear counsels' arguments.

## II. The Legal Standard for Summary Judgment

"Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (per curiam) (quotation marks omitted); Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020). The moving party "bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue

---

[2] The plaintiffs initially included Office Depot, Inc. as a defendant. (Docket Entry No. 2). The court dismissed all claims against Office Depot, without prejudice, in June 2020. (Docket Entry Nos. 12, 15).

of material fact," *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (citation and quotation marks omitted), and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301–02 (5th Cir. 2020) (citation and quotation marks omitted). While the party moving for summary judgment must demonstrate the absence of a genuine and material factual dispute, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (per curiam) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994) (per curiam)). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (citation and quotation marks omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (citation and quotation marks omitted).

When the moving party has met its burden, "the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation

and quotation marks omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

## III. Analysis

### A. The Summary Judgment Evidence

The summary judgment record consists of the following exhibits the parties submitted:

- declarations of Elijah Naylor, TForce's compliance manager, and Brian Tyson, Jumpstar's managing director, (Docket Entry Nos. 25-1, 25-2);

- a contractor agreement between Jumpstar and TForce, (Docket Entry No. 25-3);

- excerpts of Fuller's, Sandifer's, and Edwards's depositions, (Docket Entry Nos. 25-4, 25-5, 25-6, 26-5, 26-6, 26-7);

- tax forfeitures filed by the Texas Secretary of State against Jumpstar, (Docket Entry Nos. 26-1, 26-2);

- applications for reinstatement and requests to set aside revocations or forfeitures filed by Jumpstar, (Docket Entry Nos. 26-3, 26-4);

- a wage statement allegedly provided by TForce to Fuller, (Docket Entry No. 26-8);

- text and email communications between the parties, (Docket Entry Nos. 26-9, 26-10, 26-11, 26-12);

- a real-time tracking report allegedly showing drivers' hours, (Docket Entry No. 26-13); and

- a photograph of the plaintiffs' TForce-branded clothing, (Docket Entry No. 26-14).

### B. Joint Employer Status

To determine whether an individual or entity is an "employer" under the FLSA, courts apply the "economic reality test." *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) (citation and quotation marks omitted). The Fifth Circuit has identified two "overlapping" versions of that test. *Artis v. Asberry*, No. CIV.A. G-10-323, 2012 WL 5031196, at *4 (S.D. Tex. Oct. 16, 2012).

5

In *Wirst v. Lone Star Steel Co.*, the Fifth Circuit instructed that, to determine if an individual or entity is a joint employer, the court must consider "the total employment situation" with "particular regard" to: (1) whether the plaintiffs' employment takes place on the alleged employer's premises; (2) how much control the alleged employer exerts over the plaintiffs; (3) whether the alleged employer has the power to fire or hire the plaintiffs or modify their employment conditions; (4) whether the plaintiffs perform a "specialty job" within the production line; and (5) whether the plaintiffs can refuse to work for the alleged employer or can work for others. 405 F.2d 668, 669–70 (5th Cir. 1968). Although each factor is "always potentially relevant, . . . they are not exhaustive since each case must be considered in light of the total situation or whole activity to determine whether an employer-employee relationship exists." *Seong Song v. JFE Franchising, Inc.*, 394 F. Supp. 3d 748, 755 (S.D. Tex. 2019) (citation and quotation marks omitted).

The Fifth Circuit later instructed in *Gray v. Powers* that, "[t]o determine whether an individual or entity is an employer," courts must consider "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." 673 F.3d 352, 355 (5th Cir. 2012) (citation and quotation marks omitted). "In cases where there may be more than one employer, th[e] court must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test." *Id.* (citation and quotation marks omitted). At least one factor must be satisfied for the court to find employer status. *Id.* at 357.

A district court recently held that *Gray* conflicted with *Lone Star Steel*, because *Gray* requires at least one factor to be satisfied and *Lone Star Steel* requires a determination based on

6

"the totality of each situation." *Seong Song*, 394 F. Supp. 3d at 756; *see Prejean v. Satellite, Inc.*, No. CV 17-1170, 2019 WL 6320377, at *4 n.2 (W.D. La. Nov. 25, 2019) (discussing *Seong Song*). Even recognizing this difference, the tests are substantially similar.  On the current record, TForce has not established that it is entitled to summary judgment, because the current record shows genuine factual disputes material to both the *Lone Star Steel* and *Gray* tests.  *See Prejean*, 2019 WL 6320377, at *4 n.2 (genuine issues of material fact preclude summary judgment "regardless of the test"); *Artis*, 2012 WL 5031196, at *4 (applying the factors from the "overlapping" *Lone Star Steel* and *Gray* tests).

First, there is a genuine factual dispute material to determining how much of the plaintiffs' employment took place on TForce's premises.  Naylor testified in his declaration that the plaintiffs "spent the overwhelming majority of their day in their delivery vehicles out on their delivery route."  (Docket Entry No. 25-1 at ¶ 7).  Tyson and Naylor testified that Jumpstar, and not TForce, owned and insured the delivery vehicles they and others drove.  (*Id.*; Docket Entry No. 25-2 at ¶ 7). The remainder of the plaintiffs' working time was spent on TForce's premises.  Sandifer testified that "every single day," he started work at the "same exact warehouse," which TForce owned and operated.  (Docket Entry No. 26-5 at 20).  Edwards similarly testified that he began each day at the warehouse, scanning packages and loading his truck from 5:00 a.m. to "about 6:30."  (Docket Entry No. 26-6 at 25–26, 28).  After scanning and loading the deliveries onto the delivery truck, the plaintiffs would wait for TForce's "dispatch" to "give [them] a green light" to leave the warehouse and begin making deliveries.  (Docket Entry No. 26-5 at 16–17, 20, 82; *see also* Docket Entry No. 26-6 at 29–30; Docket Entry No. 26-7 at 103).

The plaintiffs also testified that they ended each day at TForce's warehouse.  (Docket Entry No. 26-6 at 31; Docket Entry No. 26-7 at 67–68).  Fuller testified that, after he finished his

7

deliveries, he would spend an additional two hours at the warehouse loading his truck for the next day's deliveries. (Docket Entry No. 26-7 at 96–97).

Second, there is a genuine factual dispute material to determining how much supervision and control TForce exerted over the plaintiffs. TForce argues that because it contracted with Jumpstar, which employed the plaintiffs, TForce had a minimal quality-control oversight role. (Docket Entry No. 25 at 4); *see Artis*, 2012 WL 5031196, at *5 ("Mere supervision with respect to contractual warranties of quality and time of delivery, . . . are insufficient to support joint employment."). The plaintiffs' testimony describes a different situation. Edwards testified that, through a mobile-phone application, TForce monitored all employees during their deliveries and could "see exactly where [they] w[ere] at what time." (Docket Entry No. 26-6 at 32; *see also* Docket Entry No. 26-7 at 63, 103). The plaintiffs also testified that TForce required them to wear TForce-branded clothing, (Docket Entry No. 26-5 at 23; Docket Entry No. 26-6 at 25, 40; Docket Entry No. 26-7 at 84, 102; Docket Entry No. 26-14), required them to attend meetings, (Docket Entry No. 26-5 at 80; Docket Entry No. 26-6 at 59; Docket Entry No. 26-7 at 97, 106–07), modified the plaintiffs' delivery schedule throughout the day, (Docket Entry No. 26-5 at 39; Docket Entry No. 26-6 at 28, 63; Docket Entry No. 26-7 at 106–07), and set production goals for the plaintiffs, (Docket Entry No. 26-6 at 60; Docket Entry No. 26-7 at 107).

Third, there is a genuine factual dispute material to determining whether TForce had the power to hire or fire the plaintiffs. Tyson testified that no one at TForce "was involved in the decision to hire" the plaintiffs or "authorized" to make hiring decisions for Jumpstar. (Docket Entry No. 25-2 at ¶ 5). Tyson further testified that all compensation decisions "are made solely by Jumpstar," and that "TForce has no involvement in those determinations." (*Id.* at ¶ 6).

8

The plaintiffs' testimony contradicts those assertions. Edwards testified that he "had to fill out an application with [TForce]" before he could begin working. (Docket Entry No. 26-6 at 17, 25, 38). As part of that application, Edwards supplied his "[d]river's license, Social [Security Number], name, address, background check," and he submitted to a drug test. (*Id.* at 38). Most significantly, Fuller testified that he was fired by a TForce employee and that, when Fuller contacted Tyson about the decision, Tyson said that the decision was up to the TForce employee. (Docket Entry No. 26-7 at 88–90). Fuller also testified that he witnessed the TForce employee fire another Jumpstar employee. (*Id.* at 108–10).

Fourth, there is a genuine factual dispute material to determining whether TForce determined the rate and method of the plaintiffs' payment, or whether TForce otherwise maintained employment records. Naylor testified that Jumpstar, not TForce, was responsible for setting the plaintiffs' rates and methods of payment, as well as processing the plaintiffs' pay. (Docket Entry No. 25-1 at ¶ 8). According to Naylor, TForce "does not create, compile, or maintain employment files or records" or "collect and maintain . . . payroll information, employment applications, performance evaluations, disciplinary actions, or similar traditional employment records." (*Id.* at ¶ 9).

Once again, the plaintiffs' testimony disputes those assertions. Fuller testified that a TForce employee was "in control of everything, all of the numbers and things like that, as far as [it concerned] [his] pay." (Docket Entry No. 26-7 at 9–10, 14, 24). Fuller testified that when he asked Brian Tyson about an inaccuracy in his pay, Tyson told him to contact a TForce employee. (*Id.* at 25). Fuller testified that his pay was calculated largely through the information entered and processed on TForce's mobile app. (*Id*. at 30, 48–49). Fuller also submitted a wage statement that he alleges TForce used to determine his pay. (Docket Entry No. 26-8).

9

Finally, there is a genuine factual dispute material to determining whether the plaintiffs could refuse to work for TForce and work for others.[3] TForce alleges that, because the plaintiffs worked for Jumpstar and TForce was only one entity that contracted with Jumpstar, the plaintiffs were free to work for others, including other entities that contracted with Jumpstar. (Docket Entry No. 25 at 7 n.2, 12). The plaintiffs' testimony describes a more complicated situation. Sandifer testified that, excluding TForce, he did not know of "any other customers or clients of Jumpstar" for which he performed deliveries. (Docket Entry No. 26-5 at 18). Fuller similarly testified that he did not make deliveries for any company other than TForce. (Docket Entry No. 26-7 at 70–71). Sandifer testified that, if he was taken off his TForce delivery route, he could still work for Jumpstar; however, because he had the "last available route" with Jumpstar, no other routes would be available if he stopped working for TForce. (Docket Entry No. 26-5 at 53–54).

The summary judgment record shows significant factual disputes material to deciding whether TForce was a joint employer of the plaintiffs under the *Lone Star Steel* or *Gray* factors. These disputes preclude summary judgment.

**IV.   Conclusion**

TForce's motion for summary judgment, (Docket Entry No. 25), is denied.

SIGNED on March 26, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge

---

[3] The fourth *Lone Star* factor, whether the plaintiffs "perform a specialty job within the production line," is not relevant here. *See Artis*, 2012 WL 5031196, at *6 n.6 (citation and quotation marks omitted) (that factor was irrelevant for a joint-employer claim brought by nonemergency medical drivers against subcontractors). Even if the plaintiffs did not perform a specialty job, that fact does not "tilt against joint employer status." *Seong Song*, 394 F. Supp. 3d at 761.