United States District Court
Southern District of Texas
**ENTERED**
December 06, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FREDERICK FULLER, THADDEUS EDWARDS, JARVIS SANDIFER, and of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> JUMPSTAR ENTERPRISES, LLC, TFORCE FINAL MILE LLC, BRIAN TYSON and KATHLEEN TYSON, <br><br> Defendants. | § § § § § § § § § § § § § § § CIVIL ACTION NO. H-20-1027 |

## MEMORANDUM AND OPINION

Three delivery drivers, Frederick Fuller, Thaddeus Edwards, and Jarvis Sandifer, allege that their employers failed to pay overtime and minimum wages, violating the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and Chapters 61 and 62 of the Texas Labor Code. The plaintiffs seek to send notice of an FLSA collective action to other delivery drivers who worked for Jumpstar Enterprises, LLC, Brian Tyson, and Kathleen Tyson (the "Jumpstar defendants"), to deliver packages for TForce Logistics East, LLC ("TForce").[1] (Docket Entry No. 47).

TForce argues that the motion for notice should be denied because the proposed collective action is overbroad, and because the named plaintiff drivers have failed to establish that the

---

[1] The plaintiffs styled their motion as a "motion for conditional certification." After *Swales v. KLLM Transport Servs.*, 985 F.3d 430 (5th Cir. 2021), "motions for conditional certification" are "generally considered to be, and construed as, motions for [29 U.S.C.] § 216(b) notice, with the[re] being no 'certification' at all." *Clark v. Contract Land Staff, LLC*, H-20-2620, 2021 WL 4071150, at *2 (S.D. Tex. Aug. 2, 2021), *report and recommendation adopted*, H-20-2620, 2021 WL 4067259 (S.D. Tex. Sept. 7, 2021); *see also Young v. Energy Drilling Co.*, 20-cv-1716, 2021 WL 1550343, at *1 (S.D. Tex. Apr. 20, 2021) (construing motion for conditional certification as a motion for notice).

proposed class members are similarly situated. (Docket Entry No. 50). The Jumpstar defendants argue that the motion for notice should be denied because the drivers were independent contractors, not employees, and because the court cannot apply the "economic realities test" to determine independent contractor or employee status on a collective basis. (Docket Entry No. 51). Under the Fair Labor Standards Act, only employees may sue on behalf of "themselves and other employees similarly situated." *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1626 (2018) (citing 29 U.S.C. § 216(b)).

The court heard argument on the motions. Based on the motion, the responses, the record, and the applicable law, the court denies the motion for notice. The reasons are set out below.

I.  **Background**

The factual background is detailed in this court's previous memorandum and opinion denying TForce's motion for summary judgment. (Docket Entry No. 30). Those facts are briefly restated here with additional information where relevant.

TForce is a "same-day, last-mile transportation and logistics broker" headquartered in Texas. (Docket Entry No. 25, at 5; *sees also* Docket Entry No. 25-1, at ¶ 3). TForce contracts with independent businesses to provide next-day and same-day product delivery to customers. (Docket Entry No. 25-1, at ¶ 3). Based on business needs, TForce hires what it terms independent contractors to make pickups and deliveries in "specifically defined geographic territories." (*Id.*, at ¶ 4).

Jumpstar Enterprises LLC is a Texas company that performs delivery services. (Docket Entry No. 25-2, at ¶ 2). It is owned by Kathleen Tyson. (*Id.*). Brian Tyson, Kathleen Tyson's

husband, is the managing director. (*Id.*). Brian Tyson also works as a driver, making deliveries for TForce. (Docket Entry No. 47-1, at 5).

In May 2015, TForce and Jumpstar entered into a master contractor agreement, which made Jumpstar responsible for delivery logistics for several TForce warehouses located in different states. (Docket Entry No. 25-1, at ¶¶ 4, 7; Docket Entry No. 25-2, at ¶ 3; Docket Entry No. 25-3). Jumpstar, in turn, hired what it terms independent contractors to handle some of the deliveries. (Docket Entry No. 25-1, at ¶ 7). The plaintiffs allege that Jumpstar "misclassified" them as independent contractors, when they were in fact Jumpstar and TForce employees. (Docket Entry No. 2, at ¶ 1).

The named plaintiffs—Fuller, Edwards, and Sandifer—worked for Jumpstar as delivery drivers, picking up packages and furniture from TForce's Houston warehouse and delivering them to customers. (Docket Entry No. 2, at ¶ 28). The plaintiffs drove trucks that Jumpstar owned and insured. (Docket Entry. No. 25-2, at ¶ 7; Docket Entry No. 25-6, at 5). The trucks were kept at TForce's warehouse. (Docket Entry No. 26-7, at 32). The drivers wore TForce branded uniforms and used a TForce mobile app to scan packages and track deliveries. (Docket Entry No. 25-6, at 8; Docket Entry No. 26-5, at 13).

Jumpstar negotiated a "per package rate" with TForce, meaning that for every package a Jumpstar driver delivered, TForce paid Jumpstar a set amount. (Docket Entry No. 47-1, at 6). Jumpstar retained a percentage of the "per package rate," and the drivers received the remaining percentage. (Docket Entry No. 26-6, at 6). Jumpstar gave the drivers their paychecks. (Docket Entry No. 25-5, at 21).

3

The plaintiffs allege that they "were given a credit card to use to purchase fuel and diesel exhaust fluid for" the trucks. (Docket Entry No. 2, at ¶ 40). They allege that Jumpstar and TForce deducted "any amounts charged to those credit cards . . . from their wages." (*Id.*). "In several instances, these deductions pushed their wages below the minimum wage." (*Id.*). The plaintiffs have not, however, identified any specific "instance" in which deductions pushed their wages below the minimum wage.

The plaintiffs also allege that they routinely worked more than 40 hours per week and that they received no formal employment or tax records. (Docket Entry No. 2, at ¶¶ 29–32; Docket Entry No. 26-5, at 19–20; Docket Entry No. 47-8, at 2; Docket Entry No. 47-9, at 4; Docket Entry No. 47-10, at 2). The plaintiffs do not have any time records to support their allegations, because the defendants did not maintain time records. TForce produced documents recorded by its mobile app showing time stamps of when Fuller first and last scanned packages each workday. (Docket Entry No. 47-6). TForce did not produce similar documents for Edwards and Sandifer. Jumpstar produced weekly wage "disbursement" records for plaintiffs Fuller and Sandifer, but not Edwards. (Docket Entry No. 47-7). "These [disbursement] records show [Fuller's and Sandifer's] gross wages but give no indication of how many hours the drivers worked, what their hourly rate was, what their overtime premium rate was, or whether they were paid an overtime premium at all." (Docket Entry No. 47, at 10).

From this information, the plaintiffs argue that the scan records show that Fuller worked overtime (based on his first and last scan times), and the weekly wage records show that no "overtime premium" was paid for those hours. (*Id.*). The plaintiffs argue that the same is true for

4

all drivers, despite the lack of any corresponding records for Edwards, Sandifer, or any potential collective-action member.

> The plaintiffs move to certify a proposed collective action of:
>
> Any individual employed and/or paid as either an employee or independent contractor of Jumpstar Enterprises, LLC, Jumpstar Logistics, LLC, Brian Tyson, Kathleen Tyson, or any of their related entities; to deliver packages on behalf of T-Force Logistics East, LLC, T-Force Final Mile, LLC, Dynamex, LLC, Dynamex Operations East, LLC or any of their related entities; or who otherwise performed services pursuant to the Independent Contractor Agreement for Transportation Services (2013) executed between Jumpstar Enterprises, LLC and Dynamex Operations, East; at any time after March 23, 2017.

(Docket Entry No. 47, at 1–2). The defendants responded. (Docket Entries Nos. 50, 51). The court heard arguments on the motion.

## II. The Legal Standard for § 216(b) Notice

The FLSA requires covered employers to pay nonexempt employees for hours worked over 40 hours in a week, at the overtime rate of "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). Section 216(b) provides employees a cause of action against employers who violate § 207. Under § 216(b), employees may proceed in a collective action when they are "similarly situated."

In *Swales v. KLLM Transport Servs., LLC*, 985 F.3d 430 (5th Cir. 2021), the Fifth Circuit provided guidance for when notice of a collective action may be issued. "Prior to *Swales*, courts almost always used the two-tiered approach espoused in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), to determine whether prospective opt-in plaintiffs in a proposed collective action were similarly situated enough to satisfy the FLSA." *Torres v. Chambers Prot. Servs., Inc.*, No. 5:20-cv-212, 2021 WL 3419705, at *3 n.3 (N.D. Tex. Aug. 5, 2021). Under the *Lusardi* two-tiered approach, courts used a "lenient, step-one 'conditional certification,'" typically "requir[ing]

5

little more than substantial allegations that the putative [collective] members were together the victims of a single decision, policy, or plan." *Swales*, 985 F.3d at 434, 436–47 (quotation marks omitted). After a notice and opt-in period and the conclusion of discovery, the court would make "a second and final 'determination, utilizing a stricter standard,' about whether the named plaintiffs and opt-ins are 'similarly situated' and may therefore proceed to trial as a collective." *Id.* at 437.

*Swales* invalidated the *Lusardi* approach by precluding courts from using a "lenient, step-one 'conditional certification.'" *Id.* at 442. Instead, a court must first decide the second step, "whether merits questions can be answered collectively . . . from the outset." *Id.* at 442. District courts in the Fifth Circuit, however, continue to use the factors from *Lusardi* to analyze whether putative collective-action members are "similarly situated." *See Torres*, 2021 WL 3419705, at *3 n.3 (citing post-*Swales* cases that still use the *Lusardi* factors); *Segovia v. Fuelco Energy LLC*, No. 17-cv-1246, 2021 WL 2187956, at *10 (W.D. Tex. May 28, 2021) ("*Swales* did not change the inquiry as to whether an FLSA action may proceed as a collective action. It instead changed when that determination should be made."). Those factors are: "(1) the disparate factual and employment settings of the proposed plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each proposed plaintiff; and (3) fairness and procedural considerations." *Lusardi*, 118 F.R.D. at 359; *see also Torres*, 2021 WL 3419705, at *3. "[T]he plaintiff[s] bear the burden of showing that the putative collection-action members are similarly situated." *Torres*, 2021 WL 3419705, at *3.

6

**III.   The Record**

The record consists of the following evidence from which the plaintiffs argue that potential collective-action members are "similarly situated," and the defendants argue that the plaintiffs have not made the showing needed for notice.

- declarations of Elijah Naylor, TForce's compliance manager, and Brian Tyson, Jumpstar's managing director (Docket Entry Nos. 25-1, 25-2);

- a contractor agreement between Jumpstar and TForce, (Docket Entry No. 25-3);

- excerpts of Fuller's, Sandifer's, and Edwards's depositions, (Docket Entry Nos. 25-4, 25-5, 25-6, 26-6, 26-7, 47-8, 47-9, 47-10);

- excerpts of Ralph Duell's deposition, manager of the Houston TForce warehouse, (Docket Entry No. 47-1, 50-1);

- a wage statement allegedly provided by TForce to Fuller, (Docket Entry No. 26-8);

- TForce mobile app records indicating the times that Fuller scanned delivered packages, (Docket Entry No. 47-6, 48-1);

- wage disbursement records produced by Jumpstar for Fuller and Sandifer, (Docket Entry No. 47-7, 48-2);

- text and email communications between the parties, (Docket Entry Nos. 26-9, 26-10, 26-11, 26-12, 47-2, 47-3, 47-5);

- a photograph of the plaintiffs' TForce-branded clothing, (Docket Entry No. 26-14); and

- declarations of Fuller and Sandifer, (Docket Entry Nos. 47-11, 47-12).

**IV.   Analysis**

   **A.   Similarly Situated**

To determine whether the plaintiffs and potential collective-action members are "similarly situated" in their "employment settings," courts typically examine whether they had "similar job requirements" and "similar pay provisions." *Lopez-Gonzales v. Ramos*, 20-cv-061, 2021 WL

7

3192171, at *5 (N.D. Tex. July, 28, 2021); *see also Collins v. Pel-State Bulk Plant*, 20-cv-0083, 2021 WL 5234968, at *3 (W.D. Tex. Sept. 29, 2021) (requiring plaintiffs to provide evidence that they "share the same job titles, perform[] the same job duties, and [are] subject to the same expectations."). The record does not support finding that the named plaintiffs and potential collective-action members are "similarly situated."

There are some common aspects between the plaintiffs and the approximately 20 potential collective-action members. TForce's Houston warehouse manager, Ralph Duell, testified that there were approximately 20 Jumpstar drivers who delivered packages for TForce from the Houston warehouse. (Docket Entry No. 47-1, at 4). Each driver had the same "principal duties": to "pick-up and deliver parcels from TForce's warehouse to end-consumers." (Docket Entry No. 25-1, at ¶ 7). At least some Jumpstar drivers used trucks "owned or leased and insured by Jumpstar." (Docket Entry No. 25-2, at ¶ 7). The trucks were kept at the TForce warehouse. (Docket Entry No. 25-4, at 13).

The drivers' workday structures were similar. "[B]efore the clock," drivers would scan and pick up their packages for the day. (Docket Entry No. 25-4, at 13; Docket Entry No. 26-5, at 4; Docket Entry No. 25-6, at 8). The drivers did not have set working hours or a set number or type of packages to deliver. The workday ended when the driver completed his or her deliveries and returned the Jumpstar truck to the warehouse. (Docket Entry No. 25-4, at 13). Duell gave the drivers their daily routes, (Docket Entry No. 47-1, at 14; Docket Entry No. 26-6, at 11), and the drivers' deliveries were tracked through a TForce mobile app. (Docket Entry No. 25-6, at 8). The number and size or weight of packages to deliver varied daily. (Docket Entry No. 47-1, at 17).

All drivers were paid in the same way. (Docket Entry No. 47-1, at 6). Jumpstar contracted with TForce for a "per package rate," and drivers working for Jumpstar would then contract with Jumpstar for a percentage of that rate. (*Id.*, at 6–7). Occasionally, Duell would contact drivers directly and offer them extra pay for an extra delivery. (*Id.*, at 13). There is no evidence that Jumpstar or TForce had a policy of calculating or paying overtime.

There is, however, no evidence that drivers other than Fuller, Jarvis, and Edwards—the three named plaintiffs—worked overtime. *See Berridge v. Pediatric Home Healthcare, LLC*, 20-cv-1025, 2021 WL 4083407, at *2 (W.D. Tex. Sept. 8, 2021) (denying collective-action notice in a post-*Swales* case when the named plaintiff "failed to identify potential plaintiffs, or submit any affidavits or other evidence from potential plaintiffs . . . [e]ven though [the] case ha[d] been pending for a year"). Fuller, Sandifer, and Edwards each testified that they worked overtime. Fuller testified that he worked more than 40 hours "every week." (Docket Entry No. 47-8, at 2). Sandifer testified that he sometimes worked 40 hours a week, sometimes 50 hours, and sometimes more. (Docket Entry No. 47-9, at 3). Edwards testified that he worked, on average, 60 hours a week. (Docket Entry No. 47-10, at 2). Fuller, Sandifer, and Edwards were not paid for overtime work. But there is no evidence that the plaintiffs' hours were common or standard among Jumpstar drivers.

The record evidence that does exist suggests that working hours varied by driver. Fuller, for example, testified that his delivery schedule was "different" from other drivers' schedules because the items that he was tasked with delivering were all over $200 or $300. (Docket Entry No. 26-7, at 27). Fuller testified that, because his items were more expensive than other drivers' items, he had to check in with dispatch for each delivery that he made, and that he was the only

9

driver required to do that. (*Id.* at 27–28). Fuller testified that his workday was not "designed by a particular set of hours," but was determined by how fast he completed his deliveries. (*Id.* at 28). The faster he made his deliveries, the shorter his day.

The record also shows that the plaintiffs earned different weekly amounts from one another. Fuller and Sandifer were each paid at the same rate (40% of the per package rate), but earned different amounts each week, suggesting that they worked different hours from one another. (*See, e.g.*, Docket Entry No. 47-7, at 1–2 (disbursement records for 8/23/2019 showing that Fuller earned $907.27, and Sandifer earned $225)). A driver's individual salary might also vary on a weekly basis, suggesting a lack of standard work hours. For example, for the week of August 23, 2019, Sandifer received $225 for deliveries. The next week, he received $608.26. (*Id.*). The lack of weekly consistency suggests that "each [collective-action] member would be required to testify as to their individual circumstances, including how often they worked" overtime without pay, or worked enough hours to result in a below minimum wages. *Cotton-Thomas v. Volvo Grp. N. Am., LLC*, 20-cv-113, 2021 WL 2125003, at *2 (N.D. Miss. May 25, 2021).

Additionally, TForce gave drivers different routes. (*See* Docket Entry No. 25-4, at 14). There is no evidence that drivers' routes were of equal length or difficulty. The record suggests that some drivers received easier and shorter routes that could be completed in less than 40 hours per week.

There is also no evidence that all Jumpstar drivers worked full-time for TForce. Duell testified that defendant Brian Tyson drove for TForce, (Docket Entry No. 47-1, at 19), but Tyson stated in his declaration that "while [he] perform[ed] some deliveries, [he] devote[d] a significant amount of [his] time managing the business of Jumpstar." (Docket Entry No. 25-2, at ¶ 4). Other

drivers, like Tyson, may not have worked as many hours each week as Fuller, Edwards, and Sandifer, because they chose to work part-time.

The plaintiffs faced challenges in obtaining evidence that other drivers worked, and were not paid for, overtime hours, but that does not excuse their burden to show that potential collective-action members are "similarly situated." *See Swales*, 985 F.3d at 443, 443 n.65. Each of the named plaintiffs and Duell testified about the documents kept by Jumpstar and TForce. Sandifer testified that he did not have an employment contract with Jumpstar, that his affiliation with Jumpstar was all verbal, and that he never received tax forms from Jumpstar or TForce. (Docket Entry No. 26-5, at 4, 19–20). Fuller testified the same. (Docket Entry No. 26-7, at 36). Jumpstar did not keep time records. Assuming that Jumpstar is an employer of the plaintiffs, the plaintiffs are required to "produce *some* evidence to show the amount and extent of the [FLSA] violation," a burden that can be satisfied "with admittedly inexact or approximate evidence." *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1330–31 (5th Cir. 1985). For instance, the plaintiffs could rely on "representational" testimony about the common aspects of work experience of Jumpstar drivers. *Aboin v. IZ Cash Inc.*, No. 20-cv-3188, 2021 WL 3616098, at *3 (S.D. Tex. June 29, 2021). The plaintiffs, however, did not produce affidavits from other drivers or elicit "representational" testimony about the work schedules in relation to the amount paid for other drivers. The plaintiffs did not present or point to testimony or evidence that Jumpstar drivers typically arrived at the TForce warehouse in a certain range of time in the morning and returned their trucks to the warehouse in a certain range of time in the evening. There is no evidence about the number, weight, or value, of packages that each driver delivered on a daily or weekly basis. There is no evidence that other drivers hired by Jumpstar worked at least 40 hours a week doing

11

deliveries for TForce. Without this evidence, there is an insufficient basis for the court to conclude that the plaintiffs and potential opt-in plaintiffs "were subject to the same [employment] expectations." *Collins*, 2021 WL 5234968, at *3.

The evidence that the plaintiffs present to show that potential collective-action members worked overtime are declarations from Fuller and Sandifer. In identical declarations, Fuller and Sandifer stated that "during [their] time working at Jumpstar Logistics, LLC, [they] became friends with and spoke regularly with other drivers who also worked for Jumpstar Logistics, LLC," and that "through [those] conversations, and upon information and belief, [they] believe[d] they were working hours in excess of 40 per work week." (Docket Entries No. 47-11, Docket Entry No. 47-12). These affidavits are insufficient to support the inference that Fuller and Sandifer were "similarly situated" to other Jumpstar drivers.

Even before *Swales*, when courts applied more lenient requirements for collective-action notice, courts refused to conditionally certify classes based solely on conclusory statements. *See, e.g.*, *Vargas v. HEB Grocery Co.*, 12-cv-116, 2012 WL 4098996, at *4 (W.D. Tex. Sept. 17, 2012) ("Plaintiffs only offer conclusory statements that they are aware that other workers were denied minimum wages and/or overtime. This is insufficient."). In *Hester v. Phillips 66 Co.*, H-18-1078, 2019 WL 1930271, at *6 (S.D. Tex. Apr. 30, 2019), this court found that the plaintiffs "presented no evidence to show that" any of the prospective plaintiffs "would actually opt in given the opportunity," despite an affidavit from the plaintiff stating that "'[b]ased on [his] experience,' working for Phillips 66, his 'observations on location, and [his] conversations with co-workers, all of the day rate workers['] . . . worked similar hours and did not receive different overtime compensation regardless of their location of expertise." *Id.* Courts have continued to hold that

12

"conclusory allegations are insufficient under . . . the new *Swales* standard." *Lopez-Gonzales*, 2021 WL 3192171, at *5 (N.D. Tex. July 28, 2021).

While "[a]ffidavits from potential opt-in plaintiffs may be probative," they are not categorically required at the notice stage. *Aboin*, 2021 WL 3616098, at *5. The plaintiffs must, however, put forth some evidence that the plaintiffs and the proposed class members are similarly situated, including in their work hours. *See id.* (noting that the plaintiff proffered testimony that all potential plaintiffs "were on similar pay schedules, were required to arrive 15 minutes before their scheduled start time to perform pre-shift duties and adhered to company policy regarding post-shift duties that lasted between 30 and 45 minutes," and that "she and her putative class's hours were clocked manually by location managers and never included the pre-and post-shift duties performed."). The plaintiffs had 19 months between filing their complaint and moving for certification to conduct preliminary discovery, including 10 months since *Swales* was decided. They did not conduct Rule 30(b)(6) depositions of TForce or Jumpstar and did not produce any affidavits of potential collective-action members. They did not explain how the variables of routes, number of packages to be delivered, and the weight and value of the packages, would allow hours and pay to be determined on a collective basis for all the drivers.

The present record shows no collective basis that the court could use to determine how many hours each Jumpstar driver worked, how often each driver worked overtime, and if any overtime is due. Because there are no time records, the plaintiffs want to use a combination of package scan records and individual testimony to determine the amount of overtime that each driver worked. The scan records show only the times that the drivers first and last scanned packages each day. They do not account for any break time or the variables of the packages

13

delivered, and they do not clearly establish the precise times that the drivers worked each day. Individual testimony would be needed from each driver to clarify if, and when, they worked overtime. To determine damages, the court would need to assess, on an individual basis, which drivers worked overtime, how often they worked overtime, and how much overtime pay is due. If this court allowed this case to proceed on a collective basis, "the collective action would quickly devolve into a cacophony of individual actions." *Swales*, 985 F.3d at 442. This is precisely the scenario that precludes the issuance of notice.

### B. The Defenses Available to the Defendant

Even if the plaintiffs could provide evidence that other class members worked overtime and were entitled to overtime payments, and that the court could discern that information on a collective basis, notice of a collective action would still be inappropriate because the present record does not support the conclusion that determining whether the drivers were employees or independent contractors could be done on a collective basis.

The core defense advanced by Jumpstar and TForce is that the drivers were independent contractors, not employees. TForce also maintains that even if the drivers were Jumpstar employees, the drivers were not TForce employees. The plaintiffs allege that the defendants misclassified them as independent contractors.

Courts use the "economic-realities test" to decide whether an individual is an employee or an independent contractor. At the notice stage, the court does not decide the merits of whether the drivers were employees or independent contractors, but the court must determine "whether the economic-realities test could be applied on a collective basis." *Swales*, 985 F.3d at 442. "If

14

answering this question requires a highly individualized inquiry into each potential opt-in's circumstances," the case should not proceed collectively. *Id.*

As previously noted in this case, the Fifth Circuit has advanced different, but similar, factors for determining whether an entity is an employer or a contractor. (Docket Entry No. 30). The Fifth Circuit has most recently stated that courts must consider "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (citation and quotation marks omitted); *see also Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014) (applying the *Gray* factors); *Lopez-Gonzales*, 2021 WL 3192171, at *2 (applying the *Gray* factors in a post-*Swales* case).

On the first factor—whether the alleged employer "possessed the power to hire and fire the employees"—the record shows differences even among the named plaintiffs. Brian Tyson, the manager of Jumpstar, stated that the plaintiffs were hired "by Jumpstar directly" and that "no one at TForce was involved in the decision to hire them." (Docket Entry No. 25-2, at ¶ 5). But the testimony of the plaintiffs suggests an inconsistent approach to hiring. Fuller, for example, testified that he was hired by Ralph Duell at TForce in August 2019 when they ran into each other at a Walmart, and Duell "told [him] that [he] could shop up Monday and [he'd] have a route." (*See* Docket Entry No. 25-4, at 6; Docket Entry No. 26-7, at 9). Fuller also testified that Duell fired him, (Docket Entry No. 26-7, at 42), despite Duell's testimony that he "would never [tell Brian Tyson to] fire a driver." (Docket Entry No. 47-1, at 43).

15

Sandifer, on the other hand, testified that Brian Tyson at Jumpstar hired and trained him. (Docket Entry No. 25-5, at 13). And Edwards testified that he was hired using a different process. Edwards filled out a job application with TForce (then Dynamex), and "once [his] application went through," he "rode with Mr. Tyson one day" for training and then started as a regular driver. (Docket Entry No. 25-6, at 5).

While "hiring" and "firing" is only one factor in discerning an employee-employer relationship, and "a party need not establish each element in every case," *Orozco*, 757 F.3d at 448, the issue at this stage is whether the court will be able to determine employment status "on a class-wide, rather than individualized, basis." *Sterling v. Greater Houston Transp. Co.*, 20-cv-910, 2021 WL 2954663, at *3 (S.D. Tex. July 14, 2021); *see Swales*, 985 F.3d at 442 ("These facts affect whether all of KLLM's independent contractors can be grouped together for purposes of (later) determining the level of control KLLM exercised over their work."). The differences in hiring and firing suggest that applying of the "economic-realities test" will be different for each driver. *See Swales*, 985 F.3d at 442 ("[T]he individualized nature of the economic-realities test is why misclassification cases rarely make it to trial on a collective basis."). These differences provide one more reason that the case cannot proceed collectively.

V.  **Conclusion**

The plaintiffs' motion for § 216(b) notice is denied. (Docket Entry No. 47).

SIGNED on December 6, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge